IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN CHARLIE PEARSON and | ) | |
| JEREMY COATS on behalf of | ) | |
| themselves and others similarly situated, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Case No.: 05-0056-BH-C |
| | ) | |
| LINDEN LUMBER COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's Motion (Doc. 9) to Compel Arbitration of the claims of Plaintiffs John Charlie Pearson and Jeremy Coats. Plaintiffs Pearson and Coats submitted a Response (Doc. 13) in Opposition to the Motion to Compel and Defendant, in turn, filed a Reply (Doc. 16) to the Response. Defendant has also filed a Motion (Doc. 17) to Strike the Affidavit (Doc. 14) of Mary Olsen, Plaintiffs' attorney, submitted in support of Plaintiffs' Response (Doc. 13). The Court has examined all of these documents and finds that Defendant's Motion (Doc. 9) to Compel Arbitration is **due to be GRANTED**. However, Defendant's Motion (Doc. 17) to Strike the affidavit of Mary Olsen is **due to be DENIED**.

**FACTS**

1. Effective January 1, 2005, Defendant Linden Lumber Company, Inc. (hereinafter, "Linden Lumber") instituted a Dispute Resolution Policy. (Doc. 9, Def.'s Mot. Compel Arb., p.1).

2. All employees of Linden Lumber, as of the effective date, executed an acknowledgment of of the Dispute Resolution Policy providing that all employment claims would be arbitrated. (*Id.*)

3. Plaintiffs John Charlie Pearson (hereinafter, "Pearson") and Jeremy Coats (hereinafter, "Coats") both executed these acknowledgments. (*Id*. at 2)

4. Pearson and Coats were laid off by Linden Lumber on January, 13, 2005. (Compl., Doc. 1).

5. Plaintiffs claim Linden Lumber has violated the Worker Adjustment and Retraining Notification Act (hereinafter, "WARN") 29 U.S.C. §2101 *et seq*. by failing to give them, and others similarly situated, written notice 60 days prior to termination. (*Id*.).

**LEGAL ANALYSIS**

Since the enactment of the FAA in 1925, the ability of parties to arbitrate their disputes has been well recognized and strongly encouraged. This Circuit notes, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Ivax v. B. Braun of America, Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, the Court still heeds that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. (citing *AT & T Techs., Inc. v. Communications Workers of America.*, 475 U.S. 643, 648 (1986)). "The FAA makes valid any written agreement to arbitrate a dispute arising out of a transaction involving interstate commerce, save upon such grounds as exist at law or in equity for the revocation of any contract." *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002) (citing 9 U.S.C. § 2). Therefore, state law contract defenses may be asserted to invalidate an arbitration agreement provided that the law at issue governs contracts generally and not arbitration agreements specifically. *Id*. at 1306.

**Burden of Production**

"A motion to compel arbitration is analogous to a motion for a summary judgment." *Edward D. Jones & Co. v. Ventura*, 2005 WL 435140, *5. When a party seeks to compel arbitration, they first have the burden of "proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce." *Id*. (citations omitted). However, once the moving party satisfies their burden, the burden then shifts onto the non-movant to present evidence that the arbitration agreement is not valid or does not apply to the dispute in question. *Id*.

In the instant case, there is no dispute that an arbitration agreement, in the form of the Dispute Resolution Policy, was entered into or that such agreement affects interstate commerce. Therefore, the burden is now on the Plaintiffs to present evidence supporting their claims that the Dispute Resolution Policy either does not apply to the current action or that it is invalid.

**I.      Plaintiffs' Claims that the Arbitration Agreement Does Not Encompass Their Claims**.

Plaintiffs first assert that their claims in this action are not covered by the January 1, 2005 Dispute Resolution Policy because Defendant's obligation to give notice under WARN predated the effective date of the agreement. (Doc. 13, Pls. Resp., p. 3). Assuming, *arguendo*, that Defendant was obligated to give notice to Plaintiffs pursuant to WARN, the date on which such notice should have been given is irrelevant in determining whether Plaintiffs' claims are controlled by the arbitration agreement. This Court, rather, looks to the date on which the cause of action accrued. A necessary element of a WARN claim is actual employment loss. *See* 29 U.S.C. § 2104. As other courts have held, this element is not satisfied until a claimant is actually terminated. *Auto. Mechs. Local No. 701 of Int'l Assoc. of Machinists & Aerospace Workers v. Santa Fe Terminal Servs., Inc.*, 830 F. Supp. 432, 434 (N.D. Ill. 1993); *see also Chestnut v. Stone Forest Indus., Inc.*, 817 F.Supp. 932, 934 n.10 (N.D. Fla. 1993). Therefore, the Court holds

that the alleged violation of the WARN Act could not have occurred until Plaintiffs were actually terminated, January 13, 2005. Thus, the Dispute Resolution Policy, that became effective prior to January 13, 2005, does encompass the claims of Plaintiffs Pearson and Coats.

II.  **Plaintiffs' Claims that the Arbitration Agreement is Unenforceable because Unconscionable and Fraudulently Induced.**

    A.  **Plaintiffs' Claims of Unconscionability**

Plaintiffs assert that the otherwise valid Dispute Resolution Policy was both procedurally and substantively unconscionable. (Pls. Resp. at 8). As Plaintiffs have correctly cited, Alabama law defines an unconscionable contract provision as, "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Leeman*, 2004 WL 2757414, *3. The standard for determining unconscionability is a four factor test that examines: "1) whether there was an absence of meaningful choice on one party's part, 2) whether the contractual terms are unreasonably favorable to one party, 3) whether there was unequal bargaining power among the parties and 4) whether there were oppressive, one-sided, or patently unfair terms in the contract." *Id*. Based upon these factors, the Court finds the Dispute Resolution Policy was neither substantively nor procedurally unconscionable.

        1.  **Substantive Unconscionability**

As the Alabama Supreme Court has explained, substantive unconscionability "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party ... ." *Id*. at *4. Based upon the language of the Dispute Resolution Policy presented to us, the Court finds that the terms contained therein are not unreasonable. The Plaintiffs simply acknowledged that they agreed to arbitrate any disputes involving compensation, training, promotion, demotion,

harassment, termination of employment or any other claims of discrimination of any kind. (Defs. Mot. Compel Arb. at 2). Plaintiffs, however, argue that such language is lopsided because they relinquished "some of the most valuable and basic rights in our legal system: the right to judicial resolution, the right to application of procedural rules ..., and the right to a jury trial on their WARN claims as well as every other conceivable claim arising out of their employment and termination thereof." (Pls. Resp. at 9). Such an argument, however, is unpersuasive.

The FAA was established in order to ensure judicial enforcement of privately made agreements to arbitrate by putting them on equal footing with other contracts. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985). To that end, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration... ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "We are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id*. at 626-627. The Supreme Court further stated, "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum." *Id*. at 628. "It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id*. The Dispute Resolution Policy does not affect Plaintiffs' ability to bring an action against Linden Lumber; it simply selects the forum in which such claims may be litigated. Contractually agreeing to arbitrate future claims is not itself unconscionable.

### 2. Procedural Unconscionability

This is not to say, however, that courts should ignore other legitimate evidence of unconscionable conduct or behavior that would invalidate agreements to arbitrate the same as other contracts. Procedural

unconscionability deals with "deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether or how to enter the transaction." *Leeman*, at *4.

Plaintiffs first cite the disparity in bargaining power between themselves and Linden Lumber as an indicium of unconscionability. The Supreme Court has held, "mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Rather, the Court indicates it should be examined on a case by case basis. *Id*.

Pearson and Coats allege that the disparity was greater in the instant case than in a typical at-will employment relationship because their bargaining power was nullifed due to their imminent termination. (Pls. Resp. at 8). The Court finds Plaintiffs' argument of unconscionability, on these grounds, unpersuasive. Plaintiffs still received some measure of consideration, in the form of continued employment, for signing the Dispute Resolution Policy. This consideration, combined with the fact that the arbitration agreement does not negate their ability to pursue statutory claims against Linden, indicates there were not unconscionably disparate bargaining postions.

Plaintiffs further claim that procedural unconscionability also stems from the alleged deception of Linden Lumber. They assert that they were deceived into signing away their rights to judicial remedy while Linden Lumber knew it was going to terminate their jobs, in violation of WARN, two weeks later. (Pls. Resp. at 8-9). As noted earlier, the burden of production, in this matter, is on the Plaintiffs to present evidence that the arbitration agreement is not valid. Plaintiffs have offered nothing more than speculation to support their theory of the alleged deception on the part of Linden Lumber. Without substantial evidence demonstrating otherwise, the Court cannot find that the arbitration agreement in question is unconscionable.

*Bess*, 294 F.3d at 1306-07.

Though Plaintiffs claim that they have not had sufficient time to uncover evidence to support their claims, the Court will not grant a period for discovery on these matters. Plaintiffs have produced little more than supposition to support what they think they may find with additional discovery. At this time, the Court does not feel that mere conjecture on the part of the Plaintiffs warrants any further discovery. Furthermore, the longstanding federal policy supporting the use of arbitration as a valid and legitimate means of dispute resolution establishes that compelling Plaintiffs to arbitrate their claims in this matter will not prove an injustice.

### B. Plaintiff's Claims of Suppression Fraud

Similar to their contentions of procedural unconscionability, Plaintiffs rest their claims of Suppression Fraud on the alleged deceptive behavior of Linden Lumber. (Pls. Resp. at 6). Again, Plaintiffs cannot carry their burden of production and, as stated above, the Court feels that a discovery period for this matter is inappropriate.

### III. Defendant's Motion to Strike

The Court also considers Defendant's Motion (Doc. 17) to Strike the Affidavit (Doc. 14) of Mary Olsen, Plaintiffs' attorney, submitted in support of Plaintiffs' Response (Doc. 13) to the Motion to Compel and Plaintiffs' Response (Doc. 18) to the Motion to Strike. Defendant claims that the subject declaration should be stricken in its entirety because the declaration contains conclusory, unsupported and otherwise inadmissible testimony which should not be considered as opposition evidence. Plaintiffs, rather, contend that the affidavit simply explains there has been no discovery yet, and explains the sorts of discovery that Plaintiffs would need in order to compile a factual record in regard to some of the issues implicated in the motion to compel arbitration.

The Court **DENIES** Defendant's **Motion (Doc. 17) to Strike** and properly considers Plaintiffs' affidavit.

**CONCLUSION**

The Court finds that the Dispute Resolution Policy in question does encompass Plaintiffs Coats and Pearson's claims. The Court also finds that Plaintiffs Coats and Pearson cannot support their contentions with substantial evidence that the Dispute Resolution Policy is invalid. Therefore, Defendant's **Motion (Doc. 9) to Compel Arbitration** is **hereby GRANTED**. However, Defendant's **Motion (Doc. 17) to Strike** is **hereby DENIED**. The dispute between Plaintiffs John Charlie Pearson and Jeremy Coats and Defendant Linden Lumber Company, Inc. is properly referred by this Court for arbitration.

**So ORDERED**, this 22nd day of April, 2005.

                                                      s/ W. B. Hand
                                                SENIOR DISTRICT JUDGE