## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

JOHN CHARLIE PEARSON,　　:
et al.,

　　　　　　　　　　　　　　:

　　　　Plaintiffs,

vs.　　　　　　　　　　　　:　　　CA 05-0056-BH-C

LINDEN LUMBER COMPANY, :
INC.,

　　　　　　　　　　　　　　:

　　　　Defendant.

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Court on defendant Linden Lumber Company, Inc.'s motion for attorney's fees and expenses (Doc. 70; *see also* Doc. 71 (memorandum of law in support of the motion); Docs. 72 & 73 (affidavits and time sheets)), the response of plaintiffs and their counsel in opposition to Linden Lumber's motion (Doc. 76), and the oral arguments of the parties on January 3, 2006. The motion for attorney's fees and expenses has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and SD ALA LR 72.2. Upon a review of the entire file and consideration of the motion, response and oral arguments of the parties, the Magistrate Judge recommends that the defendant's motion for attorney's fees and expenses be **DENIED**.

## FINDINGS OF FACT

1.    Plaintiffs John Charlie Pearson and Jeremy Coats filed a class action complaint for violation of the WARN Act[1] against Linden Lumber Company, Inc. (hereinafter, "Linden Lumber") in this Court on January 28, 2005. (Doc. 1) The complaint reads, in relevant part, as follows:

> 9.    On information and belief, on January 13, 2005, and earlier, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime.
>
> 10.    On January 13, 2005, and earlier, the Plaintiffs and those similarly situated were discharged through mass layoffs without cause on their part by the Defendant.
>
> 11.    On January 13, 2005, and earlier, Defendant effected a mass layoff at the facility where Plaintiffs worked by terminating more than 33% of their employees (excluding part time employees) within a ninety day period and at least within the thirty day period preceding January 13, 2005.
>
> 12.    The Plaintiffs, and those similarly situated, are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).
>
> 13.    Defendant was required by the WARN Act to give the Plaintiffs, and those similarly situated[,] at least 60 days' prior written notice of their termination.
>
> 14.    Prior to their terminations, the Plaintiffs and those

---

[1]    WARN is an anacronym for Worker Adjustment Retraining Notification. (Doc. 1, at ¶ 1)

2

similarly situated did not receive any written notice from the Defendant that complied with the requirements of the WARN Act.

15.     Defendant failed to pay the Plaintiffs and those similarly situated their respective wages, salary (sic), commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k) contributions and provide health insurance coverage and other employee benefits under ERISA in respect to them for 60 days from and after the dates of their respective terminations.

16.     As a result of Defendant's violation of the WARN Act, the Plaintiffs and those similarly situated whom they seek to represent have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay and accrued vacation pay, for 60 days; (b) pension contributions, 401(k) contributions the (sic) health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving for a period of 60 days after the dates of their respective terminations; and (c) medical expenses incurred during such period by such persons that would have been covered and paid under Defendant's employee benefit plans had that coverage continued for that period.

17.     Pursuant to 29 U.S.C. § 2104(a)(1), the Plaintiffs' claims, and the claims of those similarly situated, for 60 days wages is a claim for "back pay" and, as such, is a claim for equitable relief.

18.     The Plaintiffs' claims, and the claims of those similarly situated, for 401(k) and pension benefits for 60 days is a claim for equitable relief.

3

.   .   .

WHEREFORE, the Plaintiffs, and those similarly situated persons whom they seek to represent, demand judgment against Defendant as follows:

1.      A judgment in favor of each Plaintiff, and those similarly situated, equal to the sum of: (a) unpaid wages, salary (sic), commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 days; (b) pension and 401(k) contributions and the benefit of health and medical insurance and other fringe benefits under ERISA for 60 days; (c) any medical or other expenses incurred during the 60 days since their respective terminations that would have been covered and paid under Defendant[']s employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act[,] 28 U.S.C. § 2104(a)(1)(A) and (B), and attorneys' fees and the costs and disbursements incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6)[.]

(*Id.* at 2-3 & 4)

2.      On March 4, 2005, plaintiffs filed a motion to amend their complaint (Doc. 4); the Court granted the motion by order dated March 9, 2005 (Doc. 5). The only differences in the original complaint and amended complaint are that plaintiffs' counsel identified, in the amended complaint, several more putative class representatives, namely Valada Harris, Pamela Witherspoon and Felechia Hood and, in addition, demanded a trial by jury. (Doc. 6)

3.      On March 10, 2005, the defendant answered the amended

4

complaint. (Doc. 7) In the answer, the defendant, on several occasions, denies

any violation of the WARN Act. (*See, e.g., id*. at ¶¶ 1, 3 & 4) The answer also

contains the following two relevant paragraphs, the first asserted as an

affirmative or "other" defense and the latter as the last paragraph of the

answer:

> F.      Defendant denies that any mass layoff has
> occurred. However, **should such a mass layoff
> be proved, defendant pleads that it was caused
> by business circumstances that were not
> reasonably foreseeable as of the time that
> notice would have been required**.
>
> .      .      .
>
> **WHEREFORE,** defendant Linden Lumber
> respectfully requests that the allegations of plaintiff's
> Amended Complaint be forthwith dismissed with
> prejudice **and that it be awarded its costs and fees for
> defending against this action**.

(*Id*. at 3 & 5 (emphasis supplied)) On this same date, one of defendant's

attorneys, Timothy A. Palmer, Esquire, penned the following letter to lead

counsel for the plaintiffs, Mary Elizabeth Olsen, Esquire:

> This will acknowledge receipt of the complaint you have
> filed against Linden Lumber Company based upon your
> allegations that it violated the WARN Act in not providing 60
> days notice prior to the layoff of several of its employees on or
> about January 13, 2005. The purpose of this letter is to provide
> you with some factual background regarding the claim so that
> this matter may be dismissed in an amicable fashion.

There is no legitimate basis for your complaint. In order for your allegations of a "mass layoff" to be actionable, you must establish that the layoff in question resulted in an "employment loss" of at least "33% of the active employees, excluding part-time employees" and that more than 50 employees were affected. 20 C.F.R. 639.3 (c). The point in time which the number of employees is to be measured for the purpose of determining coverage is the date the first notice is required to be given. 20 C.F.R. 639.5(a)(2).

The layoff in the case occurred on January 13, 2005. Sixty days prior to this date was Sunday, November 14, 2004. As of Saturday November 13, 2004, the Linden facility work force consisted of 655 employees, 110 of which would be statutorily classified as part-time workers. The job elimination of which your clients complain consisted of 147 eliminations, 14 of which involved part-time workers under the statute. Contrary to the allegations of your complaint, the WARN [A]ct was not triggered because the elimination did not tally 180 or more (i.e. 33% x (655-110)). Linden is well within its limit.

We are aware that eliminations within a 90 day aggregate period may arguably trigger WARN liability. Within the 90 day look back period, Linden had an additional 10 eliminations, 4 of which were statutorily defined as part time employees. Thus, WARN is still not triggered.

Your complaint contains few factual allegations to support your claims. I note that some of your plaintiffs lost their jobs well outside the 90 day period for aggregate claims.

**As you are aware, Federal Rule of Civil Procedure 11(b) requires that any pleading be based upon information and belief formed after a reasonable inquiry that the claims are warranted under existing law and that the allegations and other factual contentions have evidentiary support. My client, Linden Lumber, is in a difficult financial position. It was the difficulty of this financial position that led to the**

6

layoffs at issue. Due to that fact, Linden has instructed me to exercise every legitimate opportunity to recover attorney's fees in this case. Linden contends that there is no legitimate factual basis for your claims. Should this matter proceed, please be advised that I will aggressively defend the matter and have no choice but to seek every avenue for recovery of our fees.

To that end, please be advised that Linden considers the present suit to be in breach of the Alabama Litigation Accountability Act and intends to seek appropriate relief to recover its fees and costs related to the present action as set forth in section 12-19-272 et seq. Code of Alabama 1975.

Finally, my client is aware that an employee of your law firm operating under the screen name "Circle," solicited the plaintiffs in this case from posting on the DemopolisLive.com website. Linden considers this to be a breach of Rule 7.3 of the Rules of Professional Conduct and intends to pursue this matter with appropriate Bar charges should the case proceed.

Measures such as the above are difficult for all the parties involved. Linden would far prefer to resolve this matter amicably through dismissal of the case. However, Linden did not violate the WARN Act and does not intend to spend the financial resources necessary to engage in a protracted defense of this matter.

Please promptly reconsider the allegations set forth in this suit and dismiss this action.

(Doc. 76, Exhibit A (emphasis supplied))

4.      Of course, as all involved are patently aware, upon receipt of this

letter, plaintiffs' counsel did not dismiss the instant lawsuit. Instead, on March

21, 2005, plaintiffs filed a motion to suspend Mr. Palmer from practice in this

Court and to disqualify him from representing the defendant in this matter.

(Doc. 11)

     4.     Under Rule 8.3 of the Alabama Rules of Professional Responsibility, a lawyer has the mandatory duty to report violations of the rules of professional responsibility to proper authorities. Rather than do so, Mr. Palmer, by his letter of March 10, attempted to obtain an agreement of dismissal of the case in exchange for an agreement to not initiate an ethics complaint. By doing so, Mr. Palmer is in violation of Rule 8.3 of the Alabama Rules of Professional Responsibility.

     5.     Mr. Palmer is likewise in violation of Rule 8.3(a) of the Model Rules of Professional Conduct of the American Bar Association:

> Because an agreement not to file an ethics complaint if a satisfactory settlement is made, is the logical corollary of a threat to file a complaint in the absence of such a settlement, we conclude that a threat to file disciplinary charges is unethical in any circumstance where a lawyer would be required to file such charges by Rule 8.3(a).

> See, Formal Op. 93-383, ABA Committee on Ethics and Professional Responsibility at, 3. (Ex. B).

The Model Rules of Professional Conduct of the American Bar Association are made a part of the local rules of this court by L.R. 83.5(f).

     6.     Mr. Palmer's conduct is also in violation of Rule 8.4(d) of the Model Rules in that it is conduct that is prejudicial

to the administration of justice. As explained by the ABA:

> Such a threat burdens both the opposing lawyer and his client by introducing extraneous factors into their assessment of whether to settle or proceed to trial. It also creates a conflict of interest between them.

> See, Formal Op. 93-383, ABA Committee on Ethics and Professional Responsibility at, 4. (Ex. B).

7.      Rule 3.10 of the Alabama Rules of Professional Conduct provides as follows: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." The Comment to Rule 3.10 elaborates: "The civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the person against whom the criminal process is so misused may be deterred from asserting his or her legal rights and when that happens the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of the criminal process tends to diminish public confidence in our legal system." While Mr. Palmer did not threaten criminal charges, his threats to Ms. Olsen were made with the intent to coerce counsel to accede to dismissing Plaintiffs' Complaint. Mr. Palmer's threats of disciplinary action have an equal, if not greater, likelihood of coercing adjustment of private civil claims as threats of criminal charges, because it would be much easier for disciplinary action to be instituted than criminal action. For example, Mr. Palmer could easily start a disciplinary investigation of Plaintiffs' counsel, while convincing the District Attorney's or U.S. Attorney's office to bring criminal charges would almost certainly be more difficult.

So, the threat of disciplinary action against Plaintiffs' counsel should be viewed as more of a real or certain threat than even the threat of criminal charges. See, Rattling the Saber: The Ethics of Threatening Criminal and Disciplinary Prosecution, J. Nick Badgerow, <u>Journal of The Missouri Bar</u>, Vol. 61 - No. 1, J a n u a r y - F e b r u a r y 2 0 0 5 . (http://www.mobar.org/journal/2005/janfeb/badgerow.htm)

8.    Because of the mandatory reporting requirement of the Alabama Rules of Professional Conduct, Plaintiffs' counsel has reported Mr. Palmer's actions to the appropriate officials of the Alabama Bar Association and is proceeding according to the processes of the Association. Additionally, Plaintiffs' counsel believes that Mr. Palmer's actions are in violation of Title 18 U.S.C. § 1503 (Influencing or injuring officer or juror generally).

9.    Mr. Palmer should be disqualified for threatening disciplinary action in an attempt to obtain an advantage in this civil matter. Mr. Palmer's conduct is subversive to the civil adjudicative process and threatens to impair the usefulness of the process.

WHEREFORE, based on the foregoing, Plaintiffs hereby move and respectfully request that this Honorable Court suspend counsel from practice in this court and disqualify counsel for Defendant from representing any party in this matter.

(*Id*. at 2-4)  The Court, on March 23, 2005, entered an order staying any ruling on this motion pending the completion of findings by the Alabama Bar Association. (Doc. 12) "Once the Alabama Bar Association has ruled on the matter, the Parties must notify the Court, the Stay will be lifted and the Court will proceed with the issue. The Court further clarifies that **this Stay does**

10

**NOT stay the entire case**, only this particular issue." (*Id*. (emphasis in original))

5.     On March 18, 2005, the defendant filed a motion to compel arbitration of the claims of Pearson and Coats. (Doc. 9) Plaintiffs filed a memorandum in opposition to the motion to compel arbitration on April 4, 2005 (Doc. 13), as well as the affidavit of Mary Olsen, Esquire (Doc. 14). Defendant filed a reply brief on April 11, 2005 (Doc. 16) and a motion to strike Olsen's affidavit (Doc. 17). By order entered April 22, 2005, the Court granted the motion to compel arbitration but denied the motion to strike Olsen's affidavit. (Doc. 20)

6.     The parties filed their Rule 26(f) report on April 22, 2005. (Doc. 21) The undersigned conducted a Rule 16(b) scheduling conference by telephone on May 19, 2005 (Doc. 24) and, that same day, entered a Rule 16(b) scheduling order (Doc. 26).

1.     <u>ISSUES SUBJECT TO DISCOVERY</u>.  Five plaintiffs bring this action in a representative capacity pursuant to 29 U.S.C. § 2104(a)(5) and Rule 23, Federal Rules of Civil Procedure. They argue that they were terminated by their employer in violation of the WARN Act. The Court has ruled that two of the plaintiffs, John Charlie Pearson and Jeremy Coats[,] must arbitrate their claims, . . . leaving the claims of Harris, Witherspoon and Hood pending before the Court.

Defendant advised the Court that it is preparing and may

file no later than June 20, 2005, a motion for summary judgment as to the claims raised by the remaining defendants. If successful, that would resolve the class certification issue as to those plaintiffs of record.[2] **Accordingly, some limited discovery is authorized in order that the remaining plaintiffs will have the ability to respond to the summary judgment motion discussed by counsel for defendant. Only that information that would be relevant to the question of whether the WARN Act is applicable to the circumstances of which the plaintiffs complain will be authorized during this first phase of discovery. Counsel for defendant has agreed to disclose all information that will be used in support of the summary judgment motion within the next thirty days. They have also agreed to informally negotiate with counsel for plaintiffs the disclosure of additional information that may be relevant to the issues to be raised on summary judgment.**

Although the Court is limiting discovery in this first phase, the parties may exceed the limits by agreement if that will save time and money.

2.    <u>DISCOVERY COMPLETION DATE</u>. All phase-one discovery is to be completed on or before **July 19, 2005.** Based on the conversation with counsel, it is anticipated that all relevant information that plaintiffs will need in order to respond to defendant's summary judgment motion will be disclosed prior to **June 19, 2005.** It is also prudent, to allow plaintiffs an additional 30 days in which to seek other information that would fall within the parameters of the discovery that has been

---

[2]    "Plaintiffs' counsel advised that leave to join an additional plaintiff, Shelia Dortch[,] is in the preparation stage. Ms. Dortch will also seek to become a class representative and may not have the same problems in proceeding with her claims as those possessed by the present plaintiffs. Since defendant reserves its right to object to the addition of a new plaintiff, this Order is designed only to prepare the present parties for resolution of existing claims. Should Judge Hand allow the addition of Ms. Dortch as a plaintiff, a modification of this Order may be required." (Doc. 26, at 2 n.1)

authorized.

.    .    .

4.    <u>AMENDMENTS TO PLEADINGS AND</u>
<u>JOINDER OF PARTIES</u>. Plaintiffs' motion seeking leave to
join an additional party shall be filed no later than **May 30,**
**2005.**

(Doc. 26, at 1-2 & 3 (footnote and date emphasis in original; emphasis

supplied))

7.     Plaintiffs filed a motion for leave to file a second amended

complaint on May 26, 2005 to add as a class representative Shelia Dortch.

(Doc. 27) The Court entered an order on May 27, 2005 ordering the defendant

to show cause why the plaintiffs' motion to amend should not be granted (Doc.

28) and upon receiving no response by the show-cause deadline of June 3,

2005, the Court, on June 6, 2005, granted plaintiffs' motion to amend the

complaint (Doc. 29); the second amended complaint was docketed on June 7,

2005 (Doc. 31).

8.     The defendant filed its motion for summary judgment on July 19,

2005. (Doc. 37; *see also* Docs. 38-40) That same date, plaintiffs filed a motion

to compel discovery and to amend the Rule 16(b) scheduling order entered on

May 19, 2005. (Doc. 41) Following the entry by the Court of an order setting

a summary judgment response date for August 9, 2005 (Doc. 42), plaintiffs,

on July 22, 2005, filed a motion to stay summary judgment proceedings pending resolution of the discovery dispute (Doc. 44). By order dated July 25, 2005, the Court granted the plaintiffs' motion to stay discovery until resolution of the motion to compel discovery. (Doc. 45) The defendant substantively responded to plaintiffs' motion to compel discovery on August 1, 2005 (Doc. 47) and, on August 9, 2005, the undersigned heard oral arguments from the parties via telephone conference (*see* Docs. 49 & 50). Immediately following the telephone conference, the undersigned endorsed an order on plaintiff's motion to compel granting in part and denying in part that motion. (Doc. 50)

> After a lengthy discussion, it was determined, for the reasons articulated during the hearing, that the motion should be granted in part and denied in part. It was found that plaintiffs should have the opportunity to examine more of the "employee action sheets" maintained in paper form by the defendant. It is therefore ordered that defendant produce for inspection those employee action sheets not already produced which clearly contain evidence of reason(s) for separation from employment, dates of separation and the person making the employment decision as to those employees that separated for any reason during the period June 24, 2004 through January 31, 2005. The sheets for employees separating prior to six months of service may be excluded from this production. Production of this additional information shall be accomplished by August 23, 2005. The information produced pursuant to this Order is protected as follows: it is for use in this action only and is not to be disclosed outside the parties, their counsel and other agents. Counsel shall attempt to agree on a written protective order and submit same to the undersigned for approval on or before

14

> August 23, 2005.[3] The motion to compel is otherwise denied for the reasons stated during the hearing. As requested, defendant may supplement its pending summary judgment motion, if that supplement is filed by August 23, 2005. In order to allow plaintiffs a reasonable opportunity to examine the new information to be produced and then prepare a summary judgment response, their new response date is set at September 27, 2005.

(*Id.* (footnote added)) Later on that same date, the endorsed order was modified as follows: "As directed by the Court, counsel for Linden Lumber Company, Inc. has conferred with his client and determines that it is necessary to request a one week extension of time in which to assemble and produce the additional 'employee action sheets' at issue. For good cause, this request is GRANTED and the response date of August 23, 2005 (see Doc. 50) is extended to August 30, 2005. The granting of this request necessitates an extension of time in which plaintiffs must respond to defendant's summary judgment motion. The response date of September 27, 2005 (Doc. 50) is extended to October 4, 2005." (Doc. 51)

9.      On September 6, 2005, the defendant filed a corrected and restated motion for summary judgment. (Doc. 54; *see also* Docs. 53 & 55-57) The Court endorsed an order granting the defendant's motion to amend/correct

---

[3]      An agreed-upon protective order was supplied to the Court on September 7, 2005 (Doc. 52, Attachment) and executed by the undersigned on September 13, 2005 (Doc. 59).

its previously-filed motion for summary judgment. (Doc. 58)

10.    The docket sheet contains the following entry dated September 27, 2005: "By telephone conference held on September 23, 2005, counsel for plaintiffs presented an oral motion to expand the scope of discovery to include an interview of approximately 70 former employees of the defendant in order to verify that the company has recorded accurately their reasons for termination. After hearing argument on the motion, the Court requested that certain information referenced in the hearing be produced by plaintiffs' counsel. That information has been received and reviewed along with the information provided by counsel for defendant on September 27, 2005. After consideration of all relevant information, it is determined that the oral motion should be DENIED. First, there is a serious argument that the remaining plaintiff, Sheila Dortch, resigned her employment as opposed to having been terminated by her employer. . . . If that is true, it is unnecessary at this stage of the proceedings to allow questioning of so many former employees on a hunch that they will contradict company records and thereby enable plaintiffs to establish a class of employees sufficient in number to trigger WARN Act litigation. Secondly, plaintiff has failed to convince the undersigned that there is a probability that a sufficient number of viable plaintiffs would be identified

16

if the discovery requested were authorized. Under these circumstances, the motion is DENIED." (Doc. 60)

11. On October 4, 2005, a motion to dismiss was filed by the remaining putative class representatives, Sheila Dortch, Valada Harris, Pamela Witherspoon and Felechia Hood. (Doc. 61) The Court entered an order, on October 5, 2005,[4] for the defendant to show cause, on or before October 19, 2005, why the plaintiffs' motion to dismiss with prejudice should not be granted. (Doc. 63) The defendant filed its response to the show cause order on October 20, 2005 (Doc. 66) and the plaintiffs their reply later that same day

---

[4] This same date, the defendant filed a motion to lift the stay regarding plaintiffs' motion to disqualify counsel and to request that the Court deny plaintiffs' motion to suspend and disqualify Palmer. (Doc. 64) The defendant attached to the motion to lift the stay, a letter addressed to Mary Olsen, Esquire, from Kim J. Ellis with the Office of General Counsel for the Disciplinary Commission of the Alabama State Bar. (*Id*., at Exhibit 1)

You previously filed a complaint against the above named lawyer. This complaint was investigated by the Birmingham Bar Association Grievance Committee and a report of that investigation, along with the Grievance Committee's recommendations, were sent to the Disciplinary Commission of the Alabama State Bar for their review.

The Disciplinary Commission has completed its review and consideration of this matter, and has determined that the matter should be dismissed.

We thank you for bringing this matter to our attention, and we appreciate your willingness to cooperate with the Alabama State Bar in its investigation of your complaint.

(*Id*.) By order dated October 6, 2005, the Court denied the plaintiffs' motion to disqualify counsel. (Doc. 65)

(Doc. 67).

12.     On November 4, 2005, the defendant filed its motion for attorney's fees and expenses. (Doc. 70; *see also* Docs. 71-74)

> 1.     Linden Lumber seeks recovery of its attorney's fees and expenses because it was forced to defend an action that Plaintiffs and their counsel knew or should have known from the outset and, over and over again throughout this litigation, had no basis in law or fact. Plaintiffs' allegations had no evidentiary support as evidenced by their currently pending motion to dismiss with prejudice, which comes after over eight months of litigation that required Linden Lumber, a faltering company, to defend. Rather than seeking judicial relief for a legitimate infringement of their rights, Plaintiffs wasted both this Court's and Linden Lumber's time and valuable resources in addressing Plaintiffs' frivolous class action efforts and ever-expanding claims of alleged violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101-2109.
>
> 2.     Defendant is entitled to attorney's fees and other expenses against: (a) Plaintiffs, under 29 U.S.C. § 2104(a)(6), because Linden Lumber prevailed in the instant action and because Plaintiffs' claims were frivolous, unreasonable and without foundation; (b) Plaintiffs and their counsel under 28 U.S.C. § 1927 because Plaintiffs and their counsel unreasonably and vexatiously multiplied this litigation; (c) Plaintiffs and their counsel under this Court's inherent power to award attorney's fees and costs because Plaintiffs and their counsel filed and litigated this case in bad faith; and (d) Plaintiffs and their counsel under the Alabama Litigation Accountability Act, Ala. Code § 12-19-270, <u>et</u> <u>seq</u>., because Plaintiffs and their counsel brought this civil action without substantial justification.

(Doc. 70, at 1-2 (footnote omitted))

## CONCLUSIONS OF LAW

### A.   Alabama Litigation Accountability Act.

1.      The undersigned takes up the issue of the viability of an award of attorney's fees and expenses  under the Alabama Litigation Accountability Act first in light of the recent decision out of this district that a party's request for fees and costs under this Act is without merit in absence of "legal authority demonstrating that Alabama substantive law applies in [a] federal question action." *Mobile Gas Service Corp. v. Utilities Board of the City of Daphne*, 2005 WL 2428329, *2 (S.D.Ala. 2005). In its brief in support of fees and expenses, the defendant cites to three federal district court cases in which awards of fees and expenses were made under the Alabama Litigation Accountability Act. (Doc. 71, at 13, citing *Fields v. Primerica Life Ins. Co.*, 2002 WL 31059371 (M.D.Ala. 2002); *Dapremont v. Overcash, Walker & Co., P.C.*, 2000 WL 1566532 (S.D.Ala. 2000); *Ledkins v. Welch*, 2000 WL 1135490 (S.D.Ala. 2000)) None of these district court cases, however, is dispositive of the applicability of the Act to this case, admittedly a federal question case in which the Court's jurisdiction is predicated upon 28 U.S.C. § 1331[5] (*see, e.g.,* Doc. 1, at ¶ 1 ("This Court has jurisdiction over Plaintiffs'

---

[5]      "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id*.

WARN Act claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(5).")),

because they were all diversity cases which looked to Alabama substantive law

to dispose of all issues. *Fields, supra,* at *1 ("As laws governing the award of

attorney's fees are considered substantive in nature, the *Erie* doctrine requires

a court sitting in diversity to make such determinations in reference to the

applicable state law. Accordingly, the court addresses Defendants' Motion in

light of the Alabama Litigation Accountability Act."); *see Dapremont, supra,*

at *7 (court sitting in diversity awarded the defendants fees and costs under the

Alabama Litigation Accountability Act); *Ledkins, supra*, at 3 & 4 ("This Court

has jurisdiction over the parties and the subject matter of this litigation

pursuant to 28 U.S.C. § 1332. The parties do not dispute that complete

diversity exists and the jurisdictional amount in dispute is satisfied. . . . In view

of the above, the Court also concluded that Welch is entitled to an award of

attorney's fees and costs pursuant to the Alabama Litigation Accountability

Act[.]").

2.      During oral argument on January 3, 2006, counsel for the

defendant cited this Court to *Barnes v. Reynolds Metals Co.*, 1999

U.S.Dist.LEXIS 9696 (N.D.Ala. 1999) in support of its claim for fees and

expenses under the Alabama Litigation Accountability Act; however, this case

provides no support for defendant's argument in this regard. While it is clear that *Barnes* was solely a federal question case, arising as it did under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and that the defendant asked for an award of attorney's fees and costs under 28 U.S.C. § 1927 and the Alabama Litigation Accountability Act, the court simply denied those requests out-of-hand with no analysis of whether it could award fees and costs under the Alabama Litigation Accountability Act in a federal question case. *See id.* at *36-37. Accordingly, *Barnes* supplies no support for the defendant's mere suggestion that this Court, in exercising its federal question jurisdiction, has the authority to award it attorney's fees and expenses under the Alabama Litigation Accountability Act.

3.      In light of the foregoing, the undersigned recommends that this Court find itself bound by the recent decision in *Mobile Gas Service Corp, supra*, and conclude that an award of attorney's fees and expenses cannot be made in a federal question case under the Alabama Litigation Accountability Act.

**B.      Fees and Expenses pursuant to 29 U.S.C. § 2104(a)(6) of the WARN Act.**

4.      The undersigned considers first whether the plaintiffs' action

was "'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith[,]'" *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980), quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), thereby justifying a fee and expense award under the WARN Act's fee-shifting provision, 29 U.S.C. § 2104(a)(6) ("[T]he court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."), "because if the award cannot be upheld on this basis, then it also cannot be upheld under [28 U.S.C.] § 1927 or as an exercise of the court's inherent power, which both require, in addition to objective frivolity, a finding that counsel engaged in conduct that was at least 'tantamount to bad faith[.]'" *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1180 (11th Cir. 2005) (citation omitted) (ADA[6] case).[7]

---

[6]   The fee-shifting provision of the ADA reads much like that contained in the WARN Act: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual." 42 U.S.C. § 12205.

[7]   The undersigned specifically finds, consistent with the positions of the parties, that the *Christiansburg Garment Co.*'s standards for assessing attorney's fees apply to WARN Act litigation. *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1011 (9th Cir. 2004) ("The attorney's fees standards from cases such as *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), provide that prevailing defendants are awarded attorney's fees only when the plaintiffs' claims were frivolous, unreasonable, or without foundation.").

5.      In *Christiansburg Garment Co., supra*, the Supreme Court set

forth the following guidance for district courts in applying the "frivolous,

unreasonable, or without foundation" criteria:

> [I]t is important that a district court resist the understandable
> temptation to engage in *post hoc* reasoning by concluding that,
> because a plaintiff did not ultimately prevail, his action must
> have been unreasonable or without foundation. That kind of
> hindsight logic could discourage all but the most airtight claims,
> for seldom can a prospective plaintiff be sure of ultimate
> success. No matter how honest one's belief that he has been the
> victim of discrimination, no matter how meritorious one's claim
> may appear at the outset, the course of litigation is rarely
> predictable. Decisive facts may not emerge until discovery or
> trial. The law may change or clarify in the midst of litigation.
> Even when the law or the facts appear questionable or
> unfavorable at the outset, a party may have an entirely
> reasonable ground for bringing suit.
>
> .      .      .
>
> Hence, a plaintiff should not be assessed his opponent's
> attorney's fees unless a court finds that his claim was frivolous,
> unreasonable, or groundless, or that the plaintiff continued to
> litigate after it clearly became so.

434 U.S. at 421-422 & 422, 98 S.Ct. at 700-701 & 701; *see Hughes, supra*,

449 U.S. at 15-16, 101 S.Ct. at 179 ("Despite the lower court's conclusion to

the contrary, the allegations of petitioner's amended complaint are definitely

not meritless in the *Christiansburg* sense. Even those allegations that were

properly dismissed for failure to state a claim deserved and received the

careful consideration of both the District Court and the Court of Appeals. Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*.").

6.     The Eleventh Circuit has identified a number of relevant factors that inform the case-by-case-determinations regarding frivolity.

> "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."

*Bruce v. City of Gainesville, Georgia*, 177 F.3d 949, 952 (11th Cir. 1999), quoting *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985); *see also Head v. Medford*, 62 F.3d 351, 355-356 (11th Cir. 1995) ("[T]he [*Sullivan*] Court explained that findings of frivolity have been sustained when either a motion for summary judgment or a motion for involuntary dismissal, Fed.R.Civ.P. 41(b), has been granted in instances where plaintiffs did not introduce *any* evidence to support their claim. . . . Where plaintiffs introduced evidence sufficient to support their claim, findings of frivolity generally do not stand. . . . In addition, courts consider several other factors in determining whether a claim is frivolous: 1) did plaintiff establish a prima facie case; 2) whether defendant offered to settle; and 3) whether the

trial court dismissed the case prior to trial or held a full-blown trial on the merits."). However, no doubt in recognition of the Supreme Court's admonition in *Christiansburg* that courts are to resist the temptation to engage in Monday-morning-quarterbacking, the Eleventh Circuit, in *Sullivan* and cases subsequent thereto, has taken pains to remind the district courts that the foregoing factors are general guidelines only, "not hard and fast rules[.]" *Sullivan, supra*, 773 F.2d at 1189; *see also Cordoba, supra,* 419 F.3d at 1177 (same)*; Bruce, supra*, 177 F.3d at 952 (same).  Moreover, to ensure that no second-guessing takes place, "when determining whether a claim was or became frivolous, [courts are to] view the evidence in the light most favorable to the *non*-prevailing plaintiff." *Johnson v. Florida*, 348 F.3d 1334, 1354 (11th Cir. 2003). Finally, the Eleventh Circuit has "recognized that the showing required to support a finding of frivolity is a '**stringent**' one[.]" *Id.* (emphasis supplied), citing *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1558 (11th Cir. 1995).

7.     In addition to considering the facts of a particular case in light of the prima facie requirements of a particular claim, a district court necessarily has to consider the role discovery plays in the frivolity analysis. The Eleventh Circuit has acknowledged that "a litigant proceeding in good

faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief," but also a concomitant duty to discontinue that quest "[w]hen it becomes apparent that discoverable evidence will not bear out the claim[.]" *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987); *see also Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir. 1991) (same); *see Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F.Supp. 906, 915 (M.D. Fla. 1989) ("Although a [claim] may seem unreasonable at the end of the case, the claim may have been reasonable at the outset of the case if decisive facts did not emerge until discovery or trial, or if the law changed or clarified in the midst of litigation."), *aff'd sub nom. Desisto College, Inc. v. Line*, 914 F.2d 267 (11th Cir. 1990).

8.     With these principles in mind, the undersigned considers whether the plaintiffs' claim under the WARN Act was frivolous, unreasonable or without foundation. In the complaint, as twice amended, plaintiffs contended that on January 13, 2005, Linden Lumber Company effected a mass layoff at its facility by terminating more than 33% of its full-time employees without giving them at least 60 days' prior written notice of their termination as required by the WARN Act. (*See, e.g.,* Doc. 31, at 3)

> Under the WARN Act, the term "mass layoff" means a reduction in force which:

> (A) is not the result of a plant closing; and
> (B) results in an employment loss at the single site of employment during any 30 day period for–
> (i)(I)    at least 33 percent of the employees (excluding any part-time employees[8]); and
> (II) at least 50 employees (excluding any part-time employees); or
> (ii) at least 500 employees (excluding any part-time employees)[.]

*Childress, supra,* 357 F.3d at 1005 (footnote added), quoting 29 U.S.C. § 2101(a)(3). "Employment loss" is defined in the Act as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period[.]" 29 U.S.C. § 2101(a)(6). Central to plaintiffs' ability to prove a WARN Act violation, obviously, was the factual determination of the size of the lay-off, *cf. Cruz v. Robert Abbey, Inc*., 778 F.Supp. 605, 612 (E.D. N.Y. 1991) ("[S]ince the legal question of WARN liability--and the necessary factual determinations of, *inter alia*, the date and size of the lay-offs--predominate both actions, a class action is the superior method for adjudicating the plaintiffs' claims[.]"), as well as the reason for each employee's separation

---

[8]    The Act defines "part-time employee" as an employee "who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

from Linden Lumber and the number of part-time employees affected, *see* 29 U.S.C. §§ 2101(a)(6) & (8), in what the defendant has affirmatively admitted was a layoff (Doc. 76, Exhibit A). It is clear that the size of the January 13, 2005 layoff, the reasons for each employee's separation, and the number of part-time employees affected are facts for which the employer, in this case Linden Lumber Company, was the best source. Accordingly, the undersigned finds that when plaintiffs filed their WARN Act claim against the defendant they were necessarily entitled to discover from the defendant evidence relating to the size of the layoff, the reason or reasons for each employee's separation, and the number of part-time employees affected by the layoff, *see Collins, supra,* 834 F.2d at 965 ("[A] litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief[.]" ), particularly in light of "the fine line between a violation of the act and no violation[.]" *Kildea v. Electro Wire Products, Inc.,* 775 F.Supp. 1014, 1017 (E.D. Mich. 1991), *opinion vacated on other grounds*; *see also id.* (the court stated that in light of this fine line, "the numbers stipulated to by the parties and the Court's subsequent numerical determinations become crucial to the outcome of the mass layoff issue."). Particularly in light of the purpose of the WARN Act, which is the protection of workers, their families, and the

communities they live in, *Childress, supra*, 357 F.3d 1000, 1005 (9th Cir. 2004) ("The purpose of the WARN Act is to provide: 'protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.'"), the plaintiffs decidedly were not required to buckle to the unsupported written niggling of defense counsel on March 10, 2005 to simply drop their lawsuit. That the plaintiffs could take this letter as the epitome of posturing is underscored by Linden Lumber's answer of that same date in which the defendant specifically plead that **"should such a mass layoff be proved, defendant pleads that it was caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required**." (Doc. 7, at 3 (emphasis supplied)) The pleading of this defense by the defendant convinces the undersigned that counsel had no solid proof (in terms of size of the layoff, reasons for separation, etc.) that there was no WARN Act violation by Linden Lumber and that in penning the letter of March 10, 2005, Mr. Palmer was trying his dead-

level best to bring a swift end to the litigation based upon oral representations (and numbers) from the defendant that no violation occurred. That the desired swift end to the litigation did not come is well-documented; instead, the case devolved into a collateral ethics' inquiry and a discovery tug-of-war. Had the defendant been entirely forthcoming on March 10, 2005 and supplied plaintiffs' counsel with the evidence revealing no WARN violation that plaintiffs were required to garner through this Court's sanctioned discovery practice, the instant motion for sanctions perhaps would have been warranted had plaintiffs not "given up the ghost." Instead, the case proceeded in the manner it did with plaintiffs properly pursuing discovery to determine the actual size of the layoff, the reasons for separation from Linden Lumber by each class member (or putative class member), etc., and at the point this Court would allow no additional discovery, a point at which plaintiffs did not have the numbers to establish a mass layoff under the WARN Act, the plaintiffs properly conceded the defendant's motion for summary judgment by not filing a response. *See Collins, supra*, 834 F.2d at 965 (A litigant proceeding in good faith has a duty to discontinue the discovery quest to prove the existence of a colorable claim for relief "[w]hen it becomes apparent that discoverable evidence will not bear out the claim[.]").

9.    In light of the foregoing and in recognition of the "policy of encouraging enforcement of remedial statutes like WARN," *Solberg v. Inline Corp.*, 740 F.Supp. 680, 687 (D. Minn. 1990), the undersigned recommends that Linden Lumber's motion for attorney's fees and expenses under the WARN Act, 29 U.S.C. § 2104(a)(6), be **DENIED** inasmuch as plaintiffs' action was not frivolous, unreasonable or without foundation. There is no dispute but that there was a layoff of employees effected by Linden Lumber on January 13, 2005, thereby laying a proper foundation for this lawsuit. Moreover, given the requirements of the WARN Act and the aforementioned fine line between a violation and no violation of the Act, the plaintiffs had a right to engage in discovery to determine the size of the layoff, etc., thereby establishing that this  action was neither frivolous or unreasonable. While the plaintiffs ultimately were unable to establish a prima facie violation of WARN and this action will be dismissed prior to trial, *Johnson, supra*, 348 F.3d at 1354-1355 ("In *Sullivan*, . . . we set down 'general guidelines' for analyzing the strength of the plaintiff's case against the *Christiansburg* standard: '(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'"), for this Court to impose expenses

31

and fees upon the plaintiffs in this case based on the general guidelines set forth in *Sullivan, supra*, would ignore the factors previously set forth by the undersigned countenancing the denial of sanctions. Simply stated, the defendant in this case has not met the stringent showing required to support a finding of frivolity. *Johnson, supra*, 348 F.3d at 1354.

10.    Because the defendant is not entitled to expenses and attorney's fees under the WARN Act, it is also not entitled to expenses and fees under 28 U.S.C. § 1927 or pursuant to this Court's inherent powers. *Cordoba, supra,* 419 F.3d at 1180.

## <u>CONCLUSION</u>

It is the recommendation of the Magistrate Judge that defendant Linden Lumber Company, Inc.'s motion for attorney's fees and expenses (Doc. 70) be **DENIED IN ITS ENTIRETY**.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 21st day of March, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE